PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TIDEWATER FINANCE COMPANY,
    *Creditor-Appellant,*

v.

JENNIFER LEE KENNEY,
    *Debtor-Appellee,*

and

FRANK J. SANTORO,
    *Trustee-Appellee.*

─────────────────

WELLS FARGO BANK NA; GMAC, LLC; TOYOTA MOTOR CREDIT CORPORATION; FORD MOTOR CREDIT COMPANY, LLC; NUVELL CREDIT COMPANY, LLC; NUVELL NATIONAL AUTO FINANCE, LLC; AMERICAN SUZUKI FINANCIAL SERVICES COMPANY, LLC; NISSAN MOTOR ACCEPTANCE CORPORATION; BANK OF AMERICA, NA; AMERICAN HONDA FINANCE CORPORATION; AMERICREDIT FINANCIAL SERVICES, INCORPORATED; JPMORGAN CHASE BANK, NA,
    *Amici Supporting Appellant.*

No. 07-1664

Appeal from the United States Bankruptcy Court for the Eastern District of Virginia, at Norfolk. David H. Adams, Bankruptcy Judge.
(06-71975-DHA)

Argued: March 18, 2008

Decided: June 25, 2008

2      TIDEWATER FINANCE v. KENNEY

Before KING and DUNCAN, Circuit Judges, and Jane R. ROTH, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

Vacated and remanded with instructions by published opinion. Senior Judge Roth wrote the opinion, in which Judge King and Judge Duncan joined.

## COUNSEL

**ARGUED:** James Robert Sheeran, TIDEWATER FINANCE COMPANY, Chesapeake, Virginia, for Appellant. Mark Clifton Leffler, BOLEMAN LAW FIRM, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Matthew M. Barnes, TIDEWATER FINANCE COMPANY, Chesapeake, Virginia, for Appellant. James M. Flaherty, BOLEMAN LAW FIRM, P.C., Richmond, Virginia, for Appellee Jennifer Lee Kenney. Joseph R. Prochaska, WILLIAMS & PROCHASKA, P.C., Nashville, Tennessee; David Greer, WILLIAMS MULLEN, Norfolk, Virginia, for Amici Supporting Appellant.

## OPINION

ROTH, Senior Circuit Judge:

I.

This is a direct appeal by creditor Tidewater Finance Co. from the Bankruptcy Court's final order confirming debtor Jennifer Kenney's Chapter 13 bankruptcy plan. The narrow issue on appeal concerns a pure question of law and is a matter of first impression with this Court: Whether the "hanging paragraph" in 11 U.S.C. § 1325(a), added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), prevents a creditor with a purchase money security interest in a "910 vehicle" from exercising his contractual

| TIDEWATER FINANCE v. KENNEY | 3 |
|---|---:|

right, under state law, to an unsecured claim for the portion of the debt not covered by the sale of such vehicle (i.e., the deficiency amount) after the vehicle is surrendered to the creditor by a Chapter 13 debtor pursuant to § 1325(a)(5)(C).[1] We hold that the hanging paragraph does not operate to deprive such undersecured "910 creditors" of their deficiency claims because the parties are bound to their contractual rights and obligations under operative state law, and the Bankruptcy Code does not command otherwise. For this reason, we will reverse the decision of the Bankruptcy Court and remand the case for further proceedings consistent with this opinion.

II.

Kenney purchased a 2003 Chevrolet Impala from Calvary Cars & Service on September 29, 2006, under a Retail Installment Sales Contract. Pursuant to the sales contract, Kenney made a down payment of $700, financed with Calvary the payment of $12,102.24, which included the cost of the vehicle, taxes, and other required fees, and provided Calvary with a purchase money security interest in the vehicle securing the entire debt. Calvary perfected the security interest and then assigned the sales contract, including the perfected security interest to Tidewater. Tidewater's lien was noted on the vehicle's title.

On December 19, 2006, less than three months after purchasing the vehicle, Kenney filed for bankruptcy. On February 1, she filed an amended Chapter 13 reorganization plan which provided for the surrender of the vehicle in full satisfaction of the debt she owed to Tidewater even though the vehicle was worth less than the balance owed. On March 6, Tidewater filed an objection to the confirmation of the amended plan. On April 12, Tidewater filed a proof of claim listing the total amount of secured debt as $12,341.84. After obtaining relief from the automatic stay and disposing of the surrendered vehicle,

---

[1]The hanging paragraph applies to claims secured by a purchase money security interest in a motor vehicle purchased within 910 days of the bankruptcy filing. Such claims are referred to as "910 claims," the vehicles are called "910 vehicles," and the creditors are called "910 creditors." The hanging paragraph specifically excludes 910 claims from the bifurcation method prescribed under 11 U.S.C. § 506.

Case 06-71975-SCS    Doc 79    Filed 07/02/08    Entered 07/03/08 14:56:33    Desc Main
Document    Page 6 of 19
Case: 07-1664    Document: 41    Date Filed: 06/27/2008    Page: 6

4                  TIDEWATER FINANCE v. KENNEY

Tidewater amended its proof of claim to change the status of the debt to unsecured and the total amount of debt to $5,271.34—the deficiency amount due under the sales contract.

By order dated May 11, 2007, the Bankruptcy Court overruled Tidewater's objection to the plan's confirmation. Specifically, the Bankruptcy Court followed the approach taken by a majority of bankruptcy courts in other circuits, concluding that the hanging paragraph in 11 U.S.C. § 1325(a) prevents a 910 creditor from bifurcating her claim and asserting an unsecured deficiency claim for any portion of the debt not covered by the sale of the vehicle. The Bankruptcy Court then entered its order confirming the plan on May 25, 2007.[2]

On June 5, 2007, the Bankruptcy Court certified, pursuant to Interim Rule 8001(f) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(d)(2)(A), that a direct appeal from Tidewater presents, among other things, a question of law as to which there is no controlling decision of this Court or of the United States Supreme Court and which requires resolution of conflicting decisions among bankruptcy courts in various circuits. We granted Tidewater's timely petition for direct appeal.

### III.

We have subject matter jurisdiction over direct appeals from final orders of bankruptcy courts pursuant to 28 U.S.C. § 158(d)(2). Because the narrow issue on appeal concerns the proper interpretation of the Bankruptcy Code, our review is plenary. *Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 (4th Cir. 1996).

### IV.

Chapter 13 of the Bankruptcy Code affords a reorganization remedy for consumers and business owners with relatively small debts.

---

[2] Kenney's Chapter 13 plan is funded at $210 per month for 36 months, a total of $7,560. It treats the surrender of the 910 vehicle to Tidewater as fully satisfying Kenney's entire indebtedness to Tidewater, including the $5,271.34 deficiency, and it promises a 15% dividend to all unsecured creditors, except Tidewater.

| TIDEWATER FINANCE V. KENNEY | 5 |
|---|---|

*Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). A debtor who qualifies for Chapter 13 relief may submit a plan that modifies the rights of secured and unsecured creditors. The bankruptcy court will confirm the plan so long as it satisfies the requirements of 11 U.S.C. § 1325(a). Under § 1325(a)(5), a plan's proposed treatment of an "allowed secured claim" will be confirmed if the plan can provide that (1) the debtor and secured creditor agree on how the claim will be paid, *see id.* at § 1325(a)(5)(A); or (2) the debtor retains the collateral securing the claim while the creditor retains the lien until either the debt is repaid under the plan or until the debtor receives a discharge, whichever occurs first, and the debtor pays adequate protection payments to the secured creditor, the total of which must not be less than the allowed amount of the claim as of the effective date of the plan, *see id.* at § 1325(a)(5)(B); or (3) *the debtor surrenders the secured collateral to the creditor holding the lien, see id.* at § 1325(a)(5)(C).[3]

---

[3]Both prior and subsequent to the enactment of the BAPCPA, § 1325(a) provided, in pertinent part, as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

\* \* \* \* \*

(5) with respect to each *allowed secured claim* provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account

6                    TIDEWATER FINANCE v. KENNEY

    By enacting the BAPCPA in 2005, Congress revised § 1325(a) by adding an unnumbered paragraph—commonly referred to as the hanging paragraph—at the end of that subsection. The hanging paragraph provides as follows:

> For purposes of paragraph (5), *section 506 shall not apply to a claim* described in that paragraph if the creditor has a *purchase money security interest* securing the debt that is the subject of the claim, the *debt was incurred within the 910-day preceding the date of the filing* of the petition, and the *collateral for that debt consists of a motor vehicle* (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a) (emphasis added). Pertinent here, § 506(a) specifies how an "allowed claim of a creditor secured by a lien on property" should be valued by providing a method of bifurcating, or dividing, a consumer's debt into secured and unsecured amounts, with the unsecured amount equaling the amount that the debt exceeds the current value of the collateral.[4] *See* 11 U.S.C. § 506(a). Under this

---

> of such claim is not less than the allowed amount of such claim; and
>
> (iii) if—
>
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;
>
> \* \* \* \* \*

11 U.S.C. § 1325(a) (emphasis added).

[4]For purposes of this appeal, the relevant portion of § 506 provides as follows:

| TIDEWATER FINANCE v. KENNEY | 7 |
|---|---|

bifurcation method, an undersecured creditor becomes an unsecured creditor for purposes of pursuing a deficiency claim.

Prior to the BAPCPA's enactment, if a Chapter 13 consumer debtor proposed a plan for confirmation which provided for the surrender of the 910 vehicle to the creditor pursuant to § 1325(a)(5)(C), § 506(a) supplied the creditor with a federal recourse remedy for a deficiency after the sale of the collateral.[5] However, since the hanging

---

(a)(1) *An allowed claim of a creditor secured by a lien on property in which the estate has an interest*, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest* or the amount so subject to setoff *is less than the amount of such allowed claim*. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. *With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.*

11 U.S.C. § 506(a) (emphasis added).

[5]Tidewater contends that the hanging paragraph does not apply to the surrender provision in § 1325(a)(5)(C). To support this contention, Tidewater argues that prior to the BAPCPA's enactment, § 506 was *only* applicable when the debtor retained collateral under § 1325(a)(5)(B), and *not* applicable when the debtor surrendered the collateral under § 1325(a)(5)(C). We do not agree. Rather, we conclude that, pre-BAPCPA, § 506(a) applied to the surrender of collateral under § 1325(a)(5)(C), especially given the Supreme Court's explicit recogni-

Case 06-71975-SCS   Doc 79   Filed 07/02/08   Entered 07/03/08 14:56:33   Desc Main
Case: 07-1664    Document: 41    Date Filed: 06/27/2008    Page: 10

8                    TIDEWATER FINANCE V. KENNEY

paragraph was added to § 1325(a), bankruptcy courts across the nation disagree as to the paragraph's effect on a 910 creditor's contractual right, under state law, to a deficiency judgment after the proceeds from the collateral's sale fail to satisfy the total debt owed. The majority of bankruptcy courts have concluded that, by eliminating the application of § 506(a) to 910 claims, the hanging paragraph ensures that such creditors are without a remedy to bifurcate their loans into secured and unsecured portions, therefore rendering their loans non-recourse regardless of what the parties' contract allows. *See e.g, In re Kenney*, No. 06-71975-A, 2007 WL 1412921, at *5 (Bankr. E.D. Va. May 10, 2007) (listing cases in which bankruptcy courts have adopted the majority view). Conversely, a minority of bankruptcy courts have concluded that Article 9 of the Uniform Commercial Code (UCC) and contract law entitle 910 creditors to an unsecured deficiency judgment after surrender of the vehicle, unless the contract provides for a non-recourse loan. *Id.* at *4 (listing cases in which bankruptcy courts have adopted the minority view). Under this approach, the unsecured balance is treated in the same manner as other unsecured debts under a Chapter 13 reorganization plan.

---

tion, in *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997), of the apparent applicability of § 506(a) to the surrender provision. Based on the language of § 506(a) which specifies that valuation of collateral should be based upon its "disposition or use," Justice Ginsburg explained:

> As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, *see* § 1325(a)(5)(C); or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor, over the life of the plan, with the equivalent of the present value of the collateral, *see* § 1325(a)(5)(B). The "disposition or use" of the collateral thus turns on the alternative the debtor chooses-in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor.

*Id.* Accordingly, it is evident to this Court that § 506 was applicable to the surrender provision in § 1325(a)(5)(C) pre-BAPCPA and continues to be applicable post-BAPCPA.

| TIDEWATER FINANCE v. KENNEY | 9 |
|---|---|

More recently, a growing number of circuit courts have adopted the minority approach, thus recognizing a 910 creditor's right to assert an unsecured deficiency claim under state law when a Chapter 13 debtor surrenders her vehicle under § 1325(a)(5)(c). See *DaimlerChrysler Financial Services Americas LLC v. Ballard*, ___ F.3d ___, 2008 WL 2080852 (10th Cir. May 19, 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *In the Matter of Wright*, 492 F.3d 829 (7th Cir. 2007); *cf. In re Long*, 519 F.3d 288 (6th Cir. 2008) (using the common law principle of interpretation known as "the equity of the statute" as a method of filling statutory gaps rather than resorting to non-bankruptcy law to preserve deficiency claims).

Based on a plain reading of the hanging paragraph, there is no question that Congress has unambiguously eliminated the 910 creditor's access to a federal remedy under § 506(a). See *Ballard*, 2008 WL 2080852 at *3; *Osborn*, 515 F.3d at 821; *In re Wright*, 492 F.3d at 832. "Because the statutory language is clear, we need not look beyond it." *Ballard*, 2008 WL 2080852 at *3, *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). However, in this case we are asked to decide whether a 910 creditor nevertheless has recourse against the debtor, under another body of law, for the remainder of the debt owed. We join our sister courts in the Seventh, Eighth, and Tenth Circuits in holding that, after a debtor satisfies the requirements for plan confirmation under § 1325(a)(5)(C) by surrendering his 910 vehicle, the parties are left to their contractual rights and obligations, and the creditor may pursue an unsecured deficiency claim under state law. See *Ballard*, 2008 WL 2080852, at *5; *Osborn*, 515 F.3d 822-23; *Wright*, 492 F.3d at 832-33.

The principle that state law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule is well recognized. See *Butner v. United States*, 440 U.S. 48, 55 (1970); see also *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S.Ct. 1199, 1204-05 (2007) (explaining the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code") (citations omitted); *Am. Bankers Ins. Co. of Florida v. Maness*, 101 F.3d 358, 365 (4th Cir. 1996) ("[W]hen Congress has not provided an explicit alternative to state law, we are mindful that

| 10 | TIDEWATER FINANCE v. KENNEY |
|---|---|

the Bankruptcy Code was written in the shadow of state law and conclude that Congress intended state law to fill the interstices.") (quoting *In re Estate of Medcare HMO*, 998 F.2d 436, 441 (7th Cir. 1993)). The Supreme Court in *Butner* explained the logic behind this principle as follows:

> *Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.* Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323. *The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests*, including the interest of a mortgagee in rents earned by mortgaged property.

440 U.S. at 55 (emphasis added). Accordingly, *Butner* confirms that, as with property interests, state law creates and defines security interests at issue in bankruptcy proceedings if no federal law requires a different result.

The Seventh Circuit Court of Appeals was the first court to resolve the split among bankruptcy courts regarding the hanging paragraph's effect on 910 claims when a vehicle is surrendered under § 1325(a)(5)(C). *See Wright*, 492 F.3d 829. In *Wright*, the court relied on the principle of *Butner* to affirm the decision of a bankruptcy judge who declined to approve a debtor's reorganization plan which proposed the surrender of a 910 vehicle to a creditor in full satisfaction of a debt owed. 492 F.3d at 832-33. Applying *Butner*, the *Wright* court held that, with § 506 no longer applicable to 910 claims, state law, in conjunction with the parties' underlying contract, created and defined a 910 creditor's entitlement to an unsecured deficiency judgment upon surrender (and subsequent sale) of the vehicle. *Id.*

| TIDEWATER FINANCE V. KENNEY | 11 |
|---|---|

The *Wright* court made clear that "it is a mistake to assume . . . that § 506 is the *only* source of authority for a deficiency judgment when the collateral is deficient." *Id.* at 832. Rather, the court recognized the principle in *Butner* that "state law determines rights and obligations when the [Bankruptcy] Code does not supply a federal rule." *Id.* (citing *Butner*, 440 U.S. 48 (1979)). Following this principle, the court concluded that (1) nothing in the Bankruptcy Code prohibits or qualifies an unsecured deficiency claim under state law following the surrender of collateral pursuant to § 1325(a)(5)(C); (2) "[c]reditors don't need § 506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law"; and (3) rather, "[s]ection 502 tells bankruptcy courts to allow claims that stem from contractual debts" and "nothing in § 502 disfavors or curtails secured claims."[6] *Id.* at 832-33. Accordingly, the *Wright* court concluded that

---

[6]Section 502, entitled "Allowance of claims or interest," is a comprehensive section of the Bankruptcy Code. 11 U.S.C. § 502. Section 502 provides, in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

\* \* \* \* \*

(k)(1) The court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if—

(A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment

the "fallback under *Butner* is the parties' contract (to the extent the deal is enforceable under state law)[,]" and any deficiency after surrender and sale of the collateral "must be treated as an unsecured debt." *Id.* at 833.

We are persuaded by the *Wright* court's reasoning and join the Seventh, Eighth, and Tenth Circuit Courts of Appeals in holding that, when a Chapter 13 debtor surrenders a 910 vehicle in accordance with § 1325(a)(5)(C), the hanging paragraph does not extinguish a 910 creditor's unsecured deficiency claim so long as state law, in conjunction with the parties' contract, allows for such claim. Specifically, we agree that § 506 is not the exclusive method for separating out the deficiency as an unsecured portion of a 910 claim. Pre-BAPCPA, the bifurcation method articulated in § 506 presented an undersecured 910 creditor with a federal recourse remedy against a Chapter 13 debtor who surrendered a vehicle with a market value less than the debt owed. Post-BAPCPA, we recognize that § 506 is no longer

---

  schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;

(B) the offer of the debtor under subparagraph (A)—

  (i) was made at least 60 days before the date of the filing of the petition; and

  (ii) provided for payment of at least 60 percent of the amount of the debt over a period not to exceed the repayment period of the loan, or a reasonable extension thereof; and

(C) no part of the debt under the alternative repayment schedule is nondischargeable.

(2) The debtor shall have the burden of proving, by clear and convincing evidence, that—

(A) the creditor unreasonably refused to consider the debtor's proposal; and

(B) the proposed alternative repayment schedule was made prior to expiration of the 60-day period specified in paragraph (1)(B)(i).

| TIDEWATER FINANCE v. KENNEY | 13 |
|---|---|

applicable to 910 claims, and we find no other bifurcation method in the Bankruptcy Code nor a rule in the Code which qualifies or eliminates a 910 creditor's contractual entitlement to a deficiency claim under state law. Thus, we conclude that such a deficiency claim may be pursued by a 910 creditor as an unsecured claim in a bankruptcy proceeding In this regard, we recognize that, before the hanging paragraph was added, § 506(a), as applied to 910 claims, merely provided "a method for the judicial valuation of an allowed secured claim; it [did] not provide a definition of the phrase 'allowed secured claim' applicable to other provisions of the Bankruptcy Code" which might be interpreted to preclude an unsecured claim for a deficiency. *Ballard*, 2008 WL 2080852 at 5 (*citing Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)). As the Seventh Circuit Court of Appeals recognized, "§ 502 rather than § 506 determines whether a claim should be allowed . . . ." *Wright*, 492 F.3d at 832. Because § 502 directs bankruptcy courts to allow claims stemming from contractual debts and neither diminishes nor disapproves of secured claims, it is evident to us that such deficiency claims must be permitted to the extent that state law allows for them. *See* 11 U.S.C. §§ 502(a), 502(b)(1), 502(k); *see also* Travelers Cas. & Sur. Co., 127 S.Ct. at 1206 ("[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."); *Osborn*, 515 F.3d at 822 (recognizing that "nothing in § 502 or § 1325 denies a creditor an unsecured deficiency claim").

Here, Tidewater is entitled, under state law and the parties' underlying contract, to a deficiency judgment against Kenney. The parties' sales contract provides Tidewater with a security interest in the vehicle, and such interest "*secures payment of all [Kenney] owe[s] on this contract*" and "secures [all] other agreements in this contract." *App.* 140-43 (emphasis added). The contract further provides that, upon Tidewater's sale of the vehicle, Tidewater "will apply the money from the sale, less allowed expenses, to the amount [Kenney] owe[s,]" and, "*[i]f money from the sale is not enough to pay the amount [Kenney] owe[s,] [she] must pay the rest to [Tidewater]*." *Id.* (emphasis added). Moreover, the sales contract specifies that "[f]ederal law and the law of the state of [Virginia] apply to this contract." *Id.* Given the explicit language in the parties' contract, there is no dispute that the contract provides Tidewater with a right to pursue a deficiency claim, and such contract is enforceable under Virginia law, particularly that state's

Case 06-71975-SCS    Doc 79    Filed 07/02/08    Entered 07/03/08 14:56:33    Desc Main
Document    Page 14 of 19
Case: 07-1664    Document: 41    Date Filed: 06/27/2008    Page: 16

14          TIDEWATER FINANCE v. KENNEY

version of Article 9 of the UCC. *See* VA. CODE ANN. §§ 8.9A-607 - 626; U.C.C. §§ 9-607 - 626.

Accordingly, we hold that, by surrendering the 910 vehicle, Kenney gave Tidewater the full market value of the collateral, and any deficiency after the sale of the vehicle is an unsecured debt that must be treated as an unsecured claim in the bankruptcy reorganization plan. *See Ballard*, 2008 WL 2080852, at * 5; *Osborne*, 515 F.3d at 822-33; *Wright*, 492 F.3d at 833. We join the Seventh Circuit Court of Appeals in further recognizing that "[such unsecured debt] need not be paid in full, any more than [Kenney's] other unsecured debts, but it can't be written off *in toto* while other unsecured creditors are paid some fraction of their entitlements." *Wright*, 492 F.3d at 833.

V.

For the foregoing reasons, we vacate the judgment of the Bankruptcy Court and remand this case for further proceedings in accordance with this opinion.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*

William Redden, Clerk
US Bankruptcy Court



FILED: June 27, 2008

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1664
(06-71975-DHA)

TIDEWATER FINANCE COMPANY

    Creditor - Appellant

v.

JENNIFER LEE KENNEY;

    Debtor - Appellee
and

FRANK J. SANTORO

    Trustee - Appellee

---------------------------

WELLS FARGO BANK NA; GMAC, LLC; TOYOTA MOTOR CREDIT
CORPORATION; FORD MOTOR CREDIT COMPANY, LLC; NUVELL CREDIT
COMPANY, LLC; NUVELL NATIONAL AUTO FINANCE, LLC; AMERICAN
SUZUKI FINANCIAL SERVICES COMPANY, LLC; NISSAN MOTOR
ACCEPTANCE CORPORATION; BANK OF AMERICA, NA; AMERICAN HONDA
FINANCE CORPORATION; AMERICREDIT FINANCIAL SERVICES,
INCORPORATED; JPMORGAN CHASE BANK, NA

    Amici Supporting Appellant

CORRECTED JUDGMENT

In accordance with the decision of this Court, the judgment of the Bankruptcy Court is vacated. This case is remanded to the Bankruptcy Court for further proceedings consistent with the Court's decision.

This judgment shall take effect upon issuance of this Court's mandate in accordance with Fed. R. App. P. 41.

The Court's judgment of June 25, 2008, remanding the case to the District Court, is corrected as of June 27, 2008, to reflect that remand is to the Bankruptcy Court. Because the correction is clerical in nature, the rehearing period runs from entry of the original judgment on June 25, 2008, rather than from filing of the corrected judgment.

/s/ PATRICIA S. CONNOR, CLERK

FILED: June 27, 2008

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 07-1664 (L)
(06-71975-DHA)

---

TIDEWATER FINANCE COMPANY

  Creditor - Appellant

v.

JENNIFER LEE KENNEY;

  Debtor - Appellee
 and

FRANK J. SANTORO

  Trustee - Appellee

------------------------------

WELLS FARGO BANK NA; GMAC, LLC; TOYOTA MOTOR CREDIT
CORPORATION; FORD MOTOR CREDIT COMPANY, LLC; NUVELL CREDIT
COMPANY, LLC; NUVELL NATIONAL AUTO FINANCE, LLC; AMERICAN
SUZUKI FINANCIAL SERVICES COMPANY, LLC; NISSAN MOTOR
ACCEPTANCE CORPORATION; BANK OF AMERICA, NA; AMERICAN HONDA
FINANCE CORPORATION; AMERICREDIT FINANCIAL SERVICES,
INCORPORATED; JPMORGAN CHASE BANK, NA

  Amici Supporting Appellant

---

O R D E R

---

The court amends its opinion filed June 25, 2008, as follows:

On page 1, "Bankruptcy" is substituted for "District" in identifying the court from which the appeal was taken.

    For the Court

    /s/ Patricia S. Connor, Clerk